# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――――――――

HAMPTON DELLINGER,

Plaintiff-Appellee,

v.

SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al.,

Defendants-Appellants.

―――――――――――

On Appeal from the United States District Court
for the District of Columbia

―――――――――――

## EMERGENCY MOTION FOR A STAY PENDING APPEAL
―――――――――――

BRETT A. SHUMATE
    *Acting Assistant Attorney General*

ERIC D. McARTHUR
    *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
DANIEL AGUILAR
DANIEL WINIK
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7245*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 305-8849*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.     Parties and Amici

Plaintiff is Hampton Dellinger.  Defendants are Scott Bessent, in his official capacity as Secretary of the Treasury; Sergio Gor, in his official capacity as Director of the White House Presidential Personnel Office; Karen Gorman, in her official capacity as Acting Special Counsel; Karl Kammann, in his official capacity as Chief Operating Officer of the Office of Special Counsel; Donald J. Trump, in his official capacity as President of the United States of America; and Russell T. Vought, in his official capacity as Director of the Office of Management and Budget.

No amici curiae or intervenors participated before the district court.

### B.     Ruling Under Review

The ruling under review is an order the district court issued on February 10, 2025, styled as an "administrative stay."  It is attached to this motion along with the rest of the district court docket.

### C.     Related Cases

This case has not been before this Court or any court other than the district court, and we are not aware of any related cases.

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
DANIEL AGUILAR

/s/ Daniel Winik
DANIEL WINIK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

STATEMENT ....................................................................................... 4

    A.   Statutory Background ......................................................4

    B.   This Litigation ..................................................................7

ARGUMENT........................................................................................ 8

    A.   The Government Is Likely To Prevail On The Merits..................8

        1.   At-will removal is the general rule, and OSC does not fit within any exceptions.........................................................9

        2.   Heads of single-member Executive departments must be removable at will by the President......................11

        3.   Dellinger cannot show entitlement to reinstatement. ......16

    B.   The Equitable Factors Favor A Stay. ............................................16

    C.   This Court Has Jurisdiction. ...........................................................18

CONCLUSION .................................................................................. 22

CERTIFICATE OF COMPLIANCE

ATTACHMENT: District Court Docket

# INTRODUCTION

This appeal arises from an "administrative stay" entered by the district court ordering the immediate reinstatement of a principal officer of the United States whom the President has lawfully relieved of his duties. Given the grave harm to the separation of powers the district court's order works, the government seeks a stay of the order pending disposition of this appeal, and respectfully requests an immediate administrative stay.

The Supreme Court has made clear—twice, and recently—that Article II precludes Congress from placing limits on the President's authority to remove principal officers of the United States who serve as sole heads of an Executive Branch agency. *Collins v. Yellen*, 594 U.S. 220 (2021); *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020). In *Seila Law*, the Court invalidated the statutory restrictions on removal of the Director of the Consumer Financial Protection Bureau (CFPB), and in *Collins*, the Court explained that *Seila Law* was "all but dispositive" as to the invalidity of similar restrictions on the removal of the Federal Housing Finance Agency (FHFA) Director, explaining that "[t]he FHFA (like the CFPB) is an agency led by a single Director." *Collins*, 594 U.S. at 250-251. Consistent with those holdings, President Biden exercised his constitutional authority to remove the Commissioner of Social Security in

2021; the only courts of appeals to have addressed the constitutionality of that removal have sustained it. *Rodriguez v. SSA*, 118 F.4th 1302, 1313-1314 (11th Cir. 2024); *Kaufmann v. Kijakazi*, 32 F.4th 843, 848-849 (9th Cir. 2022).

In this case, the President exercised the same authority recognized in *Seila Law* and *Collins*, and exercised by President Biden, by removing Hampton Dellinger as the head of the Office of Special Counsel (OSC)—an Executive Branch agency with a single head, just like the CFPB, FHFA, and Social Security Administration. This should not have been a constitutionally controversial act. Dellinger's removal was consistent with a longstanding Executive Branch view, dating to the creation of OSC during the Carter Administration, that removal protections for the Special Counsel are constitutionally dubious. The Supreme Court recently noted the lack of historical precedent for the Special Counsel's removal protections, describing OSC as a novelty—"created nearly 200 years after the Constitution was ratified," even though no other "enduring single-leader office" had been established during that time—and noted that it "drew a contemporaneous constitutional objection from the Office of Legal Counsel under President Carter." *Seila Law*, 591 U.S. at 221. And in *Collins*, when the government argued to the Supreme Court that the FHFA Director must be removable at will under *Seila Law*, it

noted that the same would be true of the Special Counsel. Reply and Response Br. for the Federal Parties, *Collins v. Mnuchin*, Nos. 19-422, 19-563, 2020 WL 6322317, at *26 (U.S. Oct. 23, 2020).

Yet the district court—just hours after Dellinger brought this suit to challenge his removal, and before the government had even had the opportunity to respond to his motion for a temporary restraining order—issued what it characterized as an "administrative stay" restoring Dellinger to the office from which the President had removed him, enjoining any efforts to impede his "access to the resources or materials of that office," and barring the installation of "any other person as Special Counsel."

Notwithstanding the district court's attempts to frame it as modest, this order is an extraordinary—indeed, unprecedented—intrusion into the President's authority to exercise "all of" "the 'executive Power'" of the United States, *Seila Law*, 590 U.S. at 203. The government is unaware of any other occasion in American history where a federal court has purported to reinstall a principal officer of the United States after the President has removed him—let alone to do so without finding that he was likely to prevail on the merits of his claim, as the district court did here. Indeed, even if reinstatement were a permissible remedy for an unlawful removal, the district

court gravely erred in ordering that remedy on an interim basis given the absence of any irreparable harm to Dellinger, on the one hand, and the potential disruption and damage to Executive Branch functions resulting from the judicially compelled reinstatement of a principal officer of the United States over the objection of the President, on the other.  This is not merely an abstract interference with Executive Branch prerogatives, but involves compelling the government to provide access to investigative files, while impeding the rightful Acting Special Counsel from faithfully executing the laws.

This Court should stay the district court's order and should grant an immediate administrative stay pending consideration of this motion.  In the alternative, to the extent the Court harbors doubt about its appellate jurisdiction, it should treat this motion as a petition for a writ of mandamus and should grant a writ directing the district court to vacate its order.

## STATEMENT

### A.     Statutory Background

Congress created the Office of the Special Counsel in the Civil Service Reform Act of 1978.  Pub. L. No. 95-454, § 202(a), 92 Stat. 1111, 1122.  The Act authorized the Special Counsel to receive and investigate "any allegation of a prohibited personnel practice," 92 Stat. at 1125, and to request corrective

action from the Merit Systems Protection Board in cases where agency heads declined to correct impermissible practices, *id.* at 1127, among other powers. The Act provided that the Special Counsel could "be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.*

From the beginning, the Executive Branch objected to the constitutionality of that removal restriction. In a published opinion, the Carter Administration's Office of Legal Counsel explained that "[b]ecause the Special Counsel [would] be performing largely executive functions, the Congress [could] not restrict the President's power to remove him." *Memorandum Opinion for the General Counsel, Civil Service Commission*, 2 Op. OLC 120, 122 (1978); *see Seila Law*, 591 U.S. at 221 (noting this "contemporaneous constitutional objection"). And when Congress passed an initial version of the Whistleblower Protection Act in 1988, separating OSC from the Merit Systems Protection Board and vesting OSC with additional powers, President Reagan pocket-vetoed the legislation, explaining that it "raised serious constitutional concerns" by, among other things, "purport[ing] to insulate the Office from presidential supervision and to limit the power of the President to remove his subordinates from office." Public Papers of the Presidents, Ronald

Reagan, Vol. II, Oct. 26, 1988, pp. 1391–1392 (1991); *see Seila Law*, 591 U.S. at 221 (citing this "veto on constitutional grounds").

Congress ultimately passed a revised version of the Whistleblower Protection Act that separated the OSC from the Merit Systems Protection Board while removing certain of the additional powers that the initial version would have granted the Office. Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16. President George H.W. Bush signed that bill, notwithstanding its maintenance of the restrictions on removal of the Special Counsel. But the Executive Branch did not recede from its constitutional objection to Congress's placement of restrictions on the removal of agency heads. In 1994, for example, the Office of Legal Counsel advised President Clinton "that the [Social Security Administration]'s new structure as an agency led by a single person with tenure protection was 'extraordinary'" and that the tenure protection presented a "'serious constitutional question'" because it "'would severely erode the President's authority.'" *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. __, 2021 WL 2981542, at *2 (O.L.C. July 8, 2021) (quoting Letter for Lloyd N. Cutler, Counsel to the President, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel (July 29, 1994)).

Today, OSC exercises essentially the same powers as it originally possessed. The Special Counsel is vested with an array of executive powers and functions. *See* 5 U.S.C. § 1212. The Special Counsel's responsibilities include investigating allegations of prohibited personnel practices, 5 U.S.C. § 1214(a)(1)(A), and initiating disciplinary actions through the filing of complaints before the Merit Systems Protection Board, *see id.* § 1215(a)(1).

### B. This Litigation

Hampton Dellinger was appointed by President Biden and confirmed by the Senate to serve as Special Counsel, beginning in March 2024. Dkt. 1 ¶ 1. On February 7, 2025, the Director of the White House Presidential Personnel Office informed Dellinger that the President had removed him from office effective immediately. *Id.* ¶ 2.

Yesterday, Dellinger brought this suit to challenge his removal, Dkt. 1, and moved for a temporary restraining order, Dkt. 2. Upon receiving the motion, the district court set a near-immediate hearing, before the government had responded to the motion for a temporary restraining order. Several hours later, the court entered what it described as "a brief administrative stay," reasoning that the stay was necessary "to preserve the status quo."

The court's order restored Dellinger to the office of Special Counsel and enjoined defendants from "deny[ing] him access to the resources or materials of that office or recogniz[ing] the authority of any other person as Special Counsel."

The government filed a notice of appeal and a motion to stay the district court's order pending appeal. The district court has not yet ruled on that motion; if it does so, we will promptly notify this Court.

## ARGUMENT

In considering a stay pending appeal, this Court examines "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009).

### A.     The Government Is Likely To Prevail On The Merits.

OSC is an Executive Branch agency "headed by a single officer," *Seila Law*, 591 U.S. at 221. As described above, from the time OSC was first created in 1978, and across several administrations in the years since, the Executive

Branch has expressed doubt as to whether Congress may preclude the President from removing the Special Counsel at will. Over the past five years, Supreme Court precedent has definitively resolved that question in the negative. Officials vested with sole responsibility for overseeing the exercise of executive power must be directly answerable to the President.

### 1. At-will removal is the general rule, and OSC does not fit within any exceptions.

Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law*, 591 U.S. at 203 (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). To discharge those responsibilities, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enterprise Fund v. Public Accounting Oversight Board*, 561 U.S. 477, 513-514 (2010). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514; *see also, e.g.*, *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022) ("The President's power to remove is essential to the performance of his Article II responsibilities and control over the Executive Branch.").

The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power." *Seila Law*, 591 U.S. at 203. First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court held that Congress could "give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Second, the Court has held that "Congress could provide tenure protections to certain *inferior* officers with narrowly defined duties." *Id.* at 204.

The Special Counsel does not fit within either of these exceptions. He is not an inferior officer with narrowly defined duties; he is a principal officer appointed by the President with Senate confirmation, *see* U.S. Const. art. II, § 2, cl. 2; 5 U.S.C. § 1211(b), who oversees his own Department and is not subservient to any other principal officer, *see* 5 U.S.C. §§ 1211-1212. *See also Free Enterprise Fund*, 561 U.S. at 511 (explaining that a Department "is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component"). Nor does the Special Counsel work as part of a "multimember expert agency," *Seila Law LLC*, 591 U.S. at 218; he serves as the sole head of his agency, 5 U.S.C. § 1211(a).

### 2. Heads of single-member Executive departments must be removable at will by the President.

Five years ago, the Supreme Court surveyed the Executive Branch and identified only four then-existing examples of single-member agencies whose heads were afforded protection against at-will removal. *See Seila Law*, 591 U.S. at 290-292. As described below, the Supreme Court has now itself invalidated the removal protections for two of these agencies (the CFPB and the FHFA). The Office of Legal Counsel and two courts of appeals have concluded that the removal protections for a third (the Social Security Administration) are likewise invalid. The Office of Special Counsel is the fourth.

In *Seila Law*, the Supreme Court invalidated the removal restrictions for the Director of the CFPB, explaining that the "single-Director structure contravenes" the Constitution's "carefully calibrated system by vesting significant governmental power in the hands of a single individual accountable to no one." 591 U.S. at 224. When the Founders chose to vest executive authority in a single person, the Court explained, they ensured that the President would be "the most democratic and politically accountable official in Government … elected by the entire Nation." *Id.* Thus, while executive officers assist the President in carrying out his responsibilities, they "remain[]

subject to the ongoing supervision and control of the elected President." *Id.* By contrast, the CFPB Director could "*unilaterally*, without meaningful supervision, issue final regulations, oversee adjudications, set enforcement priorities, initiate prosecutions, and determine what penalties to impose," *id.* at 225, while the President was constrained to permit the Director to do so absent "inefficiency, neglect of duty, or malfeasance in office," 12 U.S.C. § 5491(c)(3). The Court held that restriction unconstitutional, concluding that "principal officers who, acting alone, wield significant executive power" must be removable at will by the President. *Seila Law*, 591 U.S. at 238.

The Supreme Court applied the same logic when it invalidated the "for cause" removal restriction for the Director of the FHFA. *Collins*, 594 U.S. at 226-228. The Court explained that *Seila Law* was "all but dispositive," as the FHFA was "an agency led by a single Director" for whom Congress had "restrict[ed] the President's removal power." *Id.* at 250-251. In doing so, the Court rejected an argument that the FHFA should be treated differently because it did not exercise as much executive authority as the CFPB did. *Id.* at 251. "[T]he nature and breadth of an agency's authority is not dispositive," the Court explained, "in determining whether Congress may limit the President's power to remove its head." *Id.* at 251-252. The key purpose of the

removal power is to ensure that "Executive Branch actions" are subject "to a degree of electoral accountability," which is "implicated whenever an agency does important work." *Id.* at 252. *Collins* thus declined to carve out an exception to the general rule of at-will removal based on "the relative importance of the regulatory and enforcement authority of disparate agencies." *Id.* at 253.

In the wake of *Seila Law* and *Collins*, President Biden removed the Commissioner of Social Security without cause, contrary to the statutory limitations that restricted removal of that agency head except for "neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3). In supporting the legality of that decision, the Department of Justice explained that "the best reading of *Collins* and *Seila Law*" led to the conclusion that "the President need not heed the Commissioner's statutory tenure protection." *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *1, 7. The only courts of appeals to have considered the question—the Ninth and Eleventh Circuits—have both concluded that the removal restrictions for the single-headed Social Security Administration are unconstitutional. *Rodriguez*, 118 F.4th at 1313-1314; *Kaufmann*, 32 F.4th at 848-849.

OSC is indistinguishable from the other single-headed agencies identified in *Seila Law*. There is no doubt that the Special Counsel exercises executive authority: He may "investigate allegations of prohibited personnel practices," 5 U.S.C. § 1212(a)(2); "bring actions concerning allegations of violations of other laws within the jurisdiction of" his office, *id.* § 1212(a)(4); issue subpoenas, *id.* § 1212(b)(2)(A); intervene in other proceedings before the Merit Systems Protection Board, *id.* § 1212(c)(1); appoint others, *id.* § 1212(d)(1); prescribe regulations, *id.* § 1212(e); appear in federal court as an amicus curiae, *id.* § 1212(h)(1); and bring disciplinary actions against federal employees, *id.* § 1215(a)(1). These are core executive functions. *See, e.g., Rieth-Riley Constr. Co. v. NLRB*, 114 F.4th 519, 531 (6th Cir. 2024) (recognizing in the context of the NLRB General Counsel that "[t]he authority to initiate or dismiss complaints is a purely executive, not judicial, function" and "is squarely on the prosecutorial side of the 'prosecutorial versus adjudicatory line'").

The exercise of those duties clearly implicates the faithful execution of federal law. When Congress first created OSC in 1978, the Carter Administration objected and explained that "Congress may not properly limit the grounds for removal of the Special Counsel by the President," because the

Special Counsel "must be removable at will." *Memorandum Opinion for the General Counsel, Civil Service Commission*, 2 Op. OLC at 120. That is because "the Special Counsel's functions are executive in character," and his "role in investigating and prosecuting prohibited practices is much the same as that of a U.S. Attorney or other Federal prosecutors," which "are directed at the enforcement of the laws." *Id.* Even at that time, before *Seila Law* and *Collins*, it was clear that *Humphrey's Executor* did "not extend to an officer appointed by the President with the advice and consent of the Senate, who performs predominantly executive functions and who, by reason of the statutory scheme, is independent of the quasi-judicial process." *Id.* at 122. And President Reagan reiterated those "serious constitutional concerns" about the Special Counsel's insulation from electoral accountability. *See* Public Papers of the Presidents, Ronald Reagan, Vol. II, Oct. 26, 1988, pp. 1391–1392 (1991). The Court in *Seila Law* expressly noted these objections in explaining that there was no historical pedigree for single-member agency heads with removal protections. 591 U.S. at 221.

### 3. Dellinger cannot show entitlement to reinstatement.

If that were not enough, Dellinger is deeply mistaken in seeking judicial reinstatement to a principal office. When principal officers have been removed from their posts, they have challenged that removal in suits for back pay. *See Humphrey's Executor*, 295 U.S. at 612 (challenge sought "to recover a sum of money alleged to be due"); *Myers v. United States*, 272 U.S. 52, 106 (1926) (same); *Wiener v. United States*, 357 U.S. 349, 349-351 (1958) (same). The President cannot be compelled to retain the services of a principal officer whom the President no longer believes should be entrusted with the exercise of executive power. Such a remedy would undermine the objective of electoral accountability within the Executive Branch that animated the holdings in *Seila Law* and *Collins*.

### B. The Equitable Factors Favor A Stay.

The equitable factors likewise weigh decisively in the government's favor, and "the public interest and balance of equities factors merge" where, as here, "the government is the party" against whom an injunction is sought, *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021).

1.   As discussed above, the district court's order works an extraordinary harm to the President's authority to exercise "all of" "the 'executive Power'" of the United States, *Seila Law*, 590 U.S. at 203.  Because of that order, a person the President has chosen to remove from office is exercising executive power over the President's objection.  That sort of harm to the Executive, and to the constitutional separation of powers, is transparently irreparable.

2.   Conversely, a stay is not necessary to prevent any cognizable harm to Dellinger.  *See English v. Trump*, 279 F. Supp. 3d 307, 336 (D.D.C. 2018) (no irreparable harm to plaintiff who alleged that she had wrongfully been prevented from serving as Acting CFPB Director).  Because the "[g]overnment has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs,'" only in a "genuinely extraordinary situation" may loss of employment constitute irreparable harm.  *Sampson v. Murray*, 415 U.S. 61, 83, 92 & n.68 (1974).  Loss of income or reputation do not constitute extraordinary circumstances.  *See id.* at 89-92, 92 n.68.  And to the extent Dellinger asserts irreparable harm to the functioning of OSC itself, that assertion is misplaced, both because OSC can continue to function with an Acting Special Counsel (who had already assumed Dellinger's role before

the district court's order) and because Dellinger would lack standing to raise such a harm.

## C.    This Court Has Jurisdiction.

Finally, this Court has jurisdiction to review the district court's order. Despite the court's characterization of the order as an "administrative stay," it is in substance a temporary restraining order, and temporary restraining orders are appealable where, as here, they are akin to injunctions within the meaning of 28 U.S.C. § 1292(a)(1).

1.    The Federal Rules of Civil Procedure provide for only two forms of provisional injunctive relief: preliminary injunctions, which require "notice to the adverse party," Fed. R. Civ. P. 65(a); and temporary restraining orders, which do not require notice and which are meant only to prevent "immediate and irreparable injury, loss, or damage" that "will result to the movant before the adverse party can be heard in opposition," Fed. R. Civ. P. (b)(1)(A). Crucially, both forms of relief require the movant to satisfy the four-factor standard articulated in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). *See, e.g.*, *American Ass'n of Pol. Consultants v. Small Bus. Admin.*, 810 F. App'x 8, 9 (D.C. Cir. 2020).

In this case, however, the district court entered a novel form of relief that several other district courts have also entered in recent cases—a so-called "administrative stay." Administrative stays have a proper role in appellate litigation, when a district court has entered an injunction and an appellate court stays it briefly to "buy[] … time to deliberate." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring in denial of applications to vacate stay). But what the district court entered here was not a stay of an injunction it had previously entered; it was itself an injunction, barring the government from interfering with Dellinger's exercise of a role from which the President had removed him.

The justification the district court gave for its anomalous manner of proceeding was that it was necessary to preserve the status quo until the government could respond to Dellinger's motion and the court could resolve that motion on the merits. But as discussed above, that situation—where a litigant seeks a provisional form of injunctive relief before the other side can be heard—is exactly the situation in which the Federal Rules provide for a temporary restraining order. What the district court should have done, if it was concerned about the need for relief before the government could be heard, was to determine whether Dellinger could satisfy the demanding

four-factor standard for issuance of a temporary restraining order. The court was not permitted to issue any form of injunctive relief without addressing the *Winter* factors. This Court should therefore consider the order to be a temporary restraining order, albeit one issued without the requisite analysis.

2. Although temporary restraining orders are ordinarily not appealable, they are appealable where they are "more akin to preliminary injunctive relief." *Garza v. Hargan*, 2017 WL 9854552, at *1 n.1 (D.C. Cir. Oct. 20, 2017), *vacated in part on reh'g en banc*, 874 F.3d 735 (D.C. Cir. 2017), *vacated sub nom. Azar v. Garza*, 584 U.S. 726 (2018); *see Belbacha v. Bush*, 520 F.3d 452, 455 (D.C. Cir. 2008) (treating denial of temporary restraining order as "'tantamount to denial of a preliminary injunction'"). Indeed, the Supreme Court has stressed that a district court cannot "shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions." *Sampson v. Murray*, 415 U.S. 61, 86-87 (1974). Here, the putatively administrative nature of the district court's action cannot obscure the extraordinary nature of what the court has ordered: the restoration to office of a principal officer of the United States, over the objection of the President of the United States. The government is unaware of any prior instance in American history in which a federal court has

issued such an injunction. And that is what it is—an *injunction*. It does not merely pause the status quo (for example, by barring further action by the Office of Special Counsel pending resolution of this matter), but awards a portion of the very relief plaintiff seeks on the merits: the right to resume exercising the executive power of the United States, free from policy control by the Chief Executive. That the order is time-limited does not make it any less remarkable as a matter of law, nor does it diminish the intrusion that the district court has authorized into the President's Article II authority for each passing day. Because the district court's "administrative stay" effects immediate, irreparable harm on the Executive Branch, it is an injunction and is appealable as such under 28 U.S.C. § 1292(a)(1).

3.     Even if this Court were to conclude that the order is unappealable, the Court should exercise its discretion to treat this motion as a petition for writ of mandamus. *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 548 n.6 (D.C. Cir. 1992). The district court's extraordinary order readily satisfies the standard to grant mandamus. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-381 (2004).

## CONCLUSION

This Court should stay the district court's order pending appeal. To permit the orderly briefing and disposition of this motion, the Court should grant temporary administrative relief while it considers the motion. And to the extent the Court harbors any doubt about its appellate jurisdiction, it should treat this motion as a petition for a writ of mandamus and grant a writ directing the district court to vacate its order.

Respectfully submitted,

BRETT A. SHUMATE
   *Acting Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
DANIEL AGUILAR

*/s/ Daniel Winik*
DANIEL WINIK
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7245*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-8849*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,406 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Book Antiqua, a proportionally spaced typeface.

*/s/ Daniel Winik*
Daniel Winik

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:25–cv–00385–ABJ

DELLINGER v. BESSENT et al
Assigned to: Judge Amy Berman Jackson
Cause: 28:1331 Fed. Question

Date Filed: 02/10/2025
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**HAMPTON DELLINGER**
*in his personal capacity and in his official capacity as Special Counsel of the Office of Special Counsel*

represented by **Jackson Erpenbach**
HECKER FINK LLP
1050 K St NW
Suite 1040
Washington, DC 20001
202–796–1870
Email: jerpenbach@heckerfink.com
*ATTORNEY TO BE NOTICED*

**Joshua Adam Matz**
HECKER FINK LLP
1050 K St NW
Suite 1040
Washington, DC 20001
929–294–2537
Fax: 212–564–0883
Email: jmatz@heckerfink.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**SCOTT BESSENT**
*in his official capacity as Secretary of the Treasury*

represented by **Madeline McMahon**
DOJ–CIV
1100 L Street NW
Washington, DC 20005
(202) 451–7722
Fax: (202) 616–8470
Email: madeline.m.mcmahon@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SERGIO GOR**
*in his official capacity as Director of the White House Presidential Personnel Office*

represented by **Madeline McMahon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KAREN GORMAN**
*in her official capacity as Principal Deputy Special Counsel, upon the purported removal of the Special Counsel, the Acting Special Counsel of the Office of Special Counsel*

represented by **Madeline McMahon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

represented by

**KARL KAMMANN**
*in his official capacity as the Chief*
*Operating Officer of the Office of Special*
*Counsel*

**Madeline McMahon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DONALD J. TRUMP**
*in his official capacity as President of the*
*United States of America*

represented by **Madeline McMahon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**RUSSELL VOUGHT**
*in his official capacity as Director of the*
*Office of Management and Budget*

represented by **Madeline McMahon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/10/2025 | 1 | COMPLAINT against SCOTT BESSENT, SERGIO GOR, KAREN GORMAN, KARL KAMMANN, DONALD J. TRUMP, RUSSELL VOUGHT ( Filing fee $ 405 receipt number ADCDC−11468025) filed by HAMPTON DELLINGER. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons)(Matz, Joshua) (Entered: 02/10/2025) |
| 02/10/2025 | 2 | MOTION for Temporary Restraining Order *Request for Emergency Hearing* by HAMPTON DELLINGER. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Certificate of Compliance with Local Rule 65.1)(Matz, Joshua). Modified docket text on 2/10/2025 (znmw). (Entered: 02/10/2025) |
| 02/10/2025 | 3 | NOTICE of Appearance by Jackson Erpenbach on behalf of HAMPTON DELLINGER (Erpenbach, Jackson) (Entered: 02/10/2025) |
| 02/10/2025 | 4 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Kate L. Doniger, Filing fee $ 100, receipt number ADCDC−11468271. Fee Status: Fee Paid. by HAMPTON DELLINGER. (Attachments: # 1 Declaration of Kate L. Doniger, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Matz, Joshua) (Entered: 02/10/2025) |
| 02/10/2025 | 5 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Benjamin Stern, Filing fee $ 100, receipt number ADCDC−11468322. Fee Status: Fee Paid. by HAMPTON DELLINGER. (Attachments: # 1 Declaration of Benjamin Stern, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Matz, Joshua) (Entered: 02/10/2025) |
| 02/10/2025 | | Case Assigned to Judge Amy Berman Jackson. (zmtm) (Entered: 02/10/2025) |
| 02/10/2025 | | MINUTE ORDER granting 4 5 Motions for Leave of Kate L. Doniger and Benjamin Stern to Appear Pro Hac Vice only upon condition that the lawyers admitted, or at least one member of the lawyers' firm, undergo CM/ECF training, obtain a CM/ECF username and password, and agree to file papers electronically. No court papers will be mailed to any lawyer. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Amy Berman Jackson on 2/10/25. (DMK) (Entered: 02/10/2025) |
| 02/10/2025 | | NOTICE of Hearing: Motion Hearing set for 2/10/2025 at 4:30 PM in Courtroom 25A– In Person before Judge Amy Berman Jackson. Members of the public can access the hearing via toll free number 833–990–9400. Meeting ID 208322628. (zdrf) (Entered: 02/10/2025) |
| 02/10/2025 | | Minute Entry for proceedings held on 2/10/2025 before Judge Amy Berman Jackson re 2 MOTION for Temporary Restraining Order filed by HAMPTON DELLINGER. Motion arguments heard and taken under advisement. (Court Reporter Janice Dickman.) (zdrf) (Entered: 02/10/2025) |

| 02/10/2025 | | MINUTE ORDER. Pending before the Court is plaintiff's motion for a Temporary Restraining Order 2 . The Court received the motion shortly after it was docketed and assigned this morning, and it was occupied with another hearing for most of the day, so it set a scheduling conference for 4:30 p.m. At the hearing, counsel for the defendants represented that they did not receive the motion until the early afternoon and had not yet had an opportunity to file a response. Counsel also indicated that the defendants were unable to take a position as to whether they would be willing to freeze the firing until the Court resolved the legal issues. The Court heard some argument from both sides with respect to the factors it must consider in connection with the motion, and it appreciates the fact that the lawyers were both ready to address them orally, at least in part, this afternoon. But the Court has not yet had the benefit of a written submission by the defendants. Therefore, the defendants' opposition to the motion will be due by noon tomorrow, February 11, 2025. Give the Court's concerns about the potential irreparable harm occasioned by the challenged firing of the Special Counsel, a Presidential appointee confirmed by the Senate to serve a 5–year term who "may be removed by the President only for inefficiency, neglect of duty, or malfeasance," 5 U.S.C. § 1211(b), and given the significant statutory and constitutional issues involved, the Court will defer ruling on the motion until after it has received and considered the defendants' submission. In the interim, though, to preserve the status quo — which the D.C. Circuit has described as "the regime in place" before the challenged action, Huisha–Huisha v. Mayorkas, 27 F.4th 718, 733–34 (D.C. Cir. 2022), or "the last uncontested status which preceded the pending controversy," id., quoting District 50, United Mine Workers of America v. International Union, United Mine Workers of America, 412 F.2d 165, 168 (D.C. Cir. 1969) — the Court will issue a brief administrative stay. An administrative stay "buys the court time to deliberate": it "do[es] not typically reflect the court's consideration of the merits," but instead "reflects a first–blush judgment about the relative consequences" of the case. United States v. Texas, 144 S. Ct. 797, 798 (2024) (Barret, J., concurring). While administrative stays are more common in appellate courts, district courts have recognized their applicability in cases seeking emergency relief – including in this District. See National Council of Nonprofits v. Office of Management & Budget, No. 25–CV–239, 2025 WL 314433 (D.D.C. Jan. 28, 2025); Order, Texas v. Department of Homeland Security, No. 24–CV–306 (E.D. Tex. Aug. 26, 2024); Chef Time 1520 LLC v. Small Business Administration, No. 22–CV–3587 (D.D.C. Dec. 1, 2022). As these courts have recognized, the "[t]he authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket." Order, Texas, No. 24–CV–306, at 2. Therefore, it is HEREBY ORDERED that from the time of this order through midnight on February 13, 2025, plaintiff Hampton Dellinger shall continue to serve as the Special Counsel of the Office of Special Counsel, the position he occupied at 7:22 p.m. on Friday, February 7, 2025 when he received an email from the President, and the defendants may not deny him access to the resources or materials of that office or recognize the authority of any other person as Special Counsel. This period may only be extended by further order of the Court. SO ORDERED. Signed by Judge Amy Berman Jackson on 2/10/2025. (lcabj1) (Entered: 02/10/2025) |
| 02/10/2025 | 6 | NOTICE of Appearance by Madeline McMahon on behalf of All Defendants (McMahon, Madeline) (Entered: 02/10/2025) |
| 02/10/2025 | 7 | NOTICE OF APPEAL TO DC CIRCUIT COURT by SCOTT BESSENT, SERGIO GOR, KAREN GORMAN, KARL KAMMANN, DONALD J. TRUMP, RUSSELL VOUGHT. Fee Status: No Fee Paid. Parties have been notified. (McMahon, Madeline) (Entered: 02/10/2025) |
| 02/11/2025 | 8 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 7 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 02/11/2025) |
| 02/11/2025 | 9 | TRANSCRIPT OF PROCEEDINGS before Judge Amy Berman Jackson held on February 10, 2025; Page Numbers: 1–29. Date of Issuance: February 11, 2025. Court Reporter: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. |

| | | After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| --- | --- | --- |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/4/2025. Redacted Transcript Deadline set for 3/14/2025. Release of Transcript Restriction set for 5/12/2025.(Dickman, Janice) (Entered: 02/11/2025) |
| 02/11/2025 | <u>10</u> | MOTION to Stay *Court's Administrative Stay* by SCOTT BESSENT, SERGIO GOR, KAREN GORMAN, KARL KAMMANN, DONALD J. TRUMP, RUSSELL VOUGHT. (McMahon, Madeline) (Entered: 02/11/2025) |