No. 25-5025

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

HAMPTON DELLINGER,

Plaintiff-Appellee,

v.

SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY
PENDING APPEAL**

BRETT A. SHUMATE
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
DANIEL AGUILAR
DANIEL WINIK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 2

    A.    This Court Has Jurisdiction. ........................................................... 2

    B.    The Government Is Likely To Prevail. ............................................ 4

    C.    The Equities Favor A Stay. ............................................................. 8

CONCLUSION ..................................................................................................... 12

CERTIFICATE OF COMPLIANCE

**INTRODUCTION**

Article II of the Constitution vests in the President not just some but "all of" "the 'executive Power'" of the United States. *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020). Yet, since Monday evening, a principal office in the Executive Branch has been filled not by the President's designee but by a person the President had deliberately removed from office. Like the district court, plaintiff fails to grapple with the significance of that judicial incursion on presidential authority over the Executive Branch. Allowing a district court to install a principal officer contrary to the President's wishes—even for a short time—raises serious separation-of-powers concerns, which explains why the government took this appeal and sought immediate relief.

Plaintiff is incorrect to suggest that the government somehow acquiesced to the district court's extraordinary order by declining to grant what would have been an equally extraordinary accommodation: voluntarily reinstating to office a principal officer that the President had removed. A person who has been removed from office does not have a right to retain the office pending litigation over his removal. It was wholly appropriate for the government to decline to reinstate him voluntarily, and inappropriate for

the district court to reinstate him without even analyzing the prerequisites for any form of injunctive relief.

Plaintiff recognizes that the district court's order, though styled as an "administrative stay," is in substance a temporary restraining order. *See* Opp. 11 (order "was extremely similar in character to a TRO"). Such orders are reviewable in appropriate circumstances, and this one must be reviewable to avoid serious constitutional concerns. This Court should stay the order and, in doing so, should make clear that it would be equally improper for the district court to reissue the order as an actual temporary restraining order. Alternatively, the Court should enter the same relief as a writ of mandamus.

**ARGUMENT**

**A.    This Court Has Jurisdiction.**

If any temporary restraining order (or its functional equivalent) should be treated as an injunction within the meaning of 28 U.S.C. § 1292(a)(1), it is an injunction installing as a principal officer of the United States an individual whom the President has removed from the office in question. The reason temporary restraining orders are not typically appealable is that, like administrative stays in the appellate context, they grant only modest, time-limited

relief to preserve the status quo long enough to allow an orderly adversarial process and adjudication. This order is time-limited, as plaintiff notes, but it is anything but modest. Indeed, as we have noted, the government is unaware of any prior instance in which a federal court ordered the reinstatement of the principal officer of a single-headed agency after the President had removed the officer.

It would be extraordinary if appellate courts lacked any power to review an order like this, simply because it is temporary in effect. There is no 14-day judicial exception to the President's authority to wield all of the Executive power of the United States, and allowing one would raise serious separation-of-powers concerns. At a minimum, § 1292(a)(1) should be construed to allow this appeal in order to avoid those constitutional concerns.

In any event, this Court could obviate any jurisdictional question by treating the appeal as a petition for a writ of mandamus. *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 548 n.6 (D.C. Cir. 1992). The reason our motion did not elaborate on the mandamus factors is that they are self-evidently satisfied here for reasons fully established in our motion. First, if the district court's order is not appealable, then there is "'no other adequate means,'"

*Cheney v. U.S. District Court for D.C.*, 542 U.S. 367, 380-381 (2004), for the government to vindicate the President's authority under Article II to exercise the entire Executive power of the United States. Second, given the Supreme Court's recent decisions in *Collins v. Yellen*, 594 U.S. 220 (2021), and *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), the government's "right to issuance of the writ is clear and indisputable," *Cheney*, 542 U.S. at 381 (quotation marks omitted). And finally, the issuance of the writ "is appropriate," *id.*—indeed, it is necessary—to protect our constitutional structure by safeguarding the President's prerogative against intrusion by the Judicial Branch.

## B. The Government Is Likely To Prevail.

Plaintiff contends that it is constitutionally tolerable to limit the President's authority to remove the Special Counsel, a principal officer who heads a freestanding entity within the Executive Branch. But plaintiff's opposition is notable for two things it does not say. First, while plaintiff downplays the significance of the authorities exercised by the Special Counsel, plaintiff does not dispute that the Special Counsel oversees the exercise of executive power. *See* Opp. 18 (describing the OSC as "*more* than just an aspect of the executive power") (emphasis added)). This concession is unavoidable in light of the prosecutorial and regulatory functions performed by the Special

Counsel, including the power to initiate proceedings by filing complaints before the Merit Systems Protection Board. *See generally, e.g.*, 5 U.S.C. § 1212. Second, plaintiff does not dispute that all other removal protections for the heads of single-headed agencies (the CFPB, FHFA, and Social Security Administration) have already been invalidated.

As noted above, *Collins* and *Seila Law* make clear that the government is likely to prevail on the merits. *Seila Law* quite plainly casts doubt on the validity of the statutory restriction on removal of the Special Counsel; as our motion explains, it characterized OSC as a historical anomaly and noted that it has drawn constitutional objections from the Executive Branch. 591 U.S. at 221. More fundamentally, *Seila Law* confirmed that the President's removal power is the rule and that the only recognized exception applicable to principal officers like the Special Counsel is limited to "expert agencies led by a *group* of principal officers." 591 U.S. at 204. Plaintiff does not and cannot contend that OSC falls within that exception. Accordingly, the default rule of "the President's unrestricted removal power" governs. *Id.*

Likewise, although the *Collins* opinion did "not comment on the constitutionality of any removal restriction that applies to" the Special Counsel,

among other officers not then before the Court, the Court's care in not reaching questions not directly before it provides no meaningful basis for distinguishing the Special Counsel from the office addressed in *Collins*, just as *Seila Law*'s analysis of a different office was "all but dispositive" in *Collins* itself. *Collins*, 594 U.S. at 250, 256 n.21. Indeed, *Collins* rejected the primary argument plaintiff makes here. While plaintiff endeavors to distinguish *Seila Law* and *Collins* based on the nature of the executive power vested in the CFPB and FHFA (Opp. 17), *Collins* explained that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies" and that "the constitutionality of removal restrictions" does not "hinge[] on such an inquiry." *Collins*, 594 U.S. at 253.

Much the same is true of the Office of Legal Counsel's 2021 opinion on the constitutionality of the statutory restriction on removal of the Commissioner of Social Security. Like the Supreme Court in *Collins*, the Office of Legal Counsel stated that it was not opining on "the validity of tenure protections conferred on other executive officials—for example the Special Counsel"—and identified two ways in which it believed the Special Counsel differed from the Commissioner of Social Security (namely the Special Coun-

sel's primarily investigatory function and "limited jurisdiction"). *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. __, 2021 WL 2981542, at *9 (O.L.C. July 8, 2021). But the Office did not disavow, or even mention, its prior determination that "[b]ecause the Special Counsel [would] be performing largely executive functions, the Congress [could] not restrict the President's power to remove him." *Memorandum Opinion for the General Counsel, Civil Service Commission*, 2 Op. O.L.C. 120, 122 (1978). Plaintiff suggests that this determination was "addressed or overruled by the Office of the President" when Presidents Carter and George H.W. Bush "signed legislation with for-cause removal protections" for the Special Counsel (Opp. 18), but "it is not uncommon for Presidents to approve legislation containing parts which are objectionable on constitutional grounds," *INS v. Chadha*, 462 U.S. 919, 942 n.13 (1983), and to the extent President Bush's remarks on signing the bill suggest any degree of confidence in the constitutionality of the removal protection, they are at odds with the vast weight of Executive Branch authority discussed in our motion.

At bottom, plaintiff's submission largely rests on appeals to policy and arguments as to why Congress could reasonably have concluded that it would be desirable to provide the Special Counsel with removal protections.

But similar arguments could be and were made in defense of other agencies with invalid removal protections. *Cf. Seila Law*, 591 U.S. at 273 (Kagan, J., concurring in part) (suggesting that the CFPB Director's removal protections were a continuation of "Congress decid[ing] that effective governance depended on shielding technical or expertise-based functions relating to the financial system from political pressure (or the moneyed interests that might lie behind it)"). Article II cannot be dispensed with on policy grounds.

### C. The Equities Favor A Stay.

Finally, nothing in plaintiff's response weakens the government's showing that the equities strongly favor a stay.

1. A stay is manifestly necessary to prevent irreparable harm to the government. As noted in the letter we filed yesterday evening, the President has designated the Secretary of Veterans Affairs, Doug Collins, as Acting Special Counsel.[1] But the district court's order makes it impossible for the office to be filled by the presidential designee. It requires that part of the Executive power of the United States be exercised, instead, by a person the President has chosen to remove from office.

---

[1] We are informed that the designation occurred shortly before our filing of the letter—not, as the letter stated, on Monday.

Plaintiff disputes that this judicial intrusion on the President's authority to exercise the Executive power of the United States constitutes a "clear or concrete harm." Opp. 20. It plainly does—just as, for example, the government is clearly and concretely harmed when it is "'enjoined by a court from effectuating statutes enacted by representatives of its people,'" *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). The district court's order poses a significant and irreparable harm to the constitutional separation of powers.

2. Finally, plaintiff has not identified any cognizable and irreparable harm that he would suffer absent a stay. Plaintiff's basic contention is that "a century of ink and energy" devoted to for-cause removal protections would be wasted, and those protections "reduce[d] … to rubble," if a person removed from office could not "seek interim relief or reinstatement" pending litigation over his removal. Opp. 21. But as our motion explains, the history is on the government's side, not plaintiff's. When principal officers have been removed from their posts, they have challenged that removal in suits for back pay. *See Humphrey's Executor*, 295 U.S. at 612 (challenge sought "to recover a sum of money alleged to be due"); *Myers v. United States*, 272 U.S. 52, 106 (1926) (same); *Wiener v. United States*, 357 U.S. 349, 349-351 (1958)

(same). We are aware of just one instance in which a district court effectively reinstated members of a multimember commission who had been removed, and in that case—which was never resolved on appeal because it became moot, *Berry v. Reagan*, 732 F.2d 949 (D.C. Cir. 1983) (per curiam)—the district court's understanding was that the commission functioned as a "legislative agency," *Berry v. Reagan*, 1983 WL 538, at *2 (D.D.C. Nov. 14, 1983).

Plaintiff's assertion that "he has experienced substantial, cognizable irreparable harm by virtue of" his removal notably fails to cite a single precedent. Nor does plaintiff address, or even mention (as to this issue), the cases cited in our motion. Nor does plaintiff cite any authority for his assertion that he is "a proper party to assert the institutional equities of the OSC itself" when—at the time he sued—he had been removed from service as Special Counsel and not yet reinstated to that office.

The irreparable-harm requirement for injunctive relief is of course distinct from (and additional to) the likelihood-of-success requirement. But at bottom, plaintiff's arguments about irreparable harm only underscore why he cannot prevail on the merits. Plaintiff's contention is that, in a dispute over who should control a single-headed agency within the Executive Branch, a person whom the President has removed as the agency's principal

officer can represent the agency's interests in court and a federal court can vest the person with authority over the agency, displacing the President's designation of a different person as the agency's acting head.  There is no way to square that argument with Article II.

## CONCLUSION

This Court should stay the district court's order pending appeal and should enter a temporary administrative stay. To the extent the Court harbors any doubt about its appellate jurisdiction, it should treat this motion as a petition for a writ of mandamus and grant a writ directing the district court to vacate its order.

Respectfully submitted,

BRETT A. SHUMATE
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
DANIEL AGUILAR

/s/ Daniel Winik
DANIEL WINIK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,189 words. This reply also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Book Antiqua, a proportionally spaced typeface.

*/s/ Daniel Winik*
Daniel Winik